**COMANCHE COUNTY RURAL WATER DISTRICT NO. I, Appellee,**

v.

**The CITY OF LAWTON, Oklahoma, Edward A. Hilliary, Intervenor in the trial court, Appellants.**

**No. 44085.**

Supreme Court of Oklahoma.

Aug. 1, 1972.

Rehearing Denied Oct. 10, 1972.

C. William Stratton, Lawton, for appellee.

Charles W. Jennings, Manville Redman, Lawton, for appellants.

WILLIAMS, Justice.

This is an appeal from the judgment of the trial court granting the petition of appellee, Comanche County Rural Water District No. 1, for a writ of mandamus against appellants, the City of Lawton and some of its officials, and Edward A. Hilliary, who were, respectively, defendants and an intervenor in the trial court. For convenience, we will refer to the parties hereinafter as District, City and Hilliary.

District is a non-profit rural water district organized in 1965 pursuant to the pro-

visions of 82 O.S.Supp.1963, §§ 1301 et seq., to serve the Medicine Park area of Comanche County. Both before and after the organization of the District, Hilliary operated a small water distribution system in the same general vicinity. Both District and Hilliary purchased filtered water for resale from the City, which has water pipelines and facilities nearby. A substantial portion of District's funding consists of a loan from, or insured by, the Farmers Home Administration pursuant to 7 U.S.C.A. § 1926.

The City's sales to Hilliary apparently are made pursuant to authority found in 11 O.S.1971, §§ 303 and 304. Under § 304, the water-sale contract with Hilliary may be "abrogated" at any time the governing body of the City, by resolution, shall declare that the water being sold is "required by such city for its own use and use of its inhabitants".

The City's sales to District are authorized by 11 O.S.1971, §§ 330.51 et seq., concerning sales of water to non-profit organizations. Under § 330.52, the City's activities in selling water to non-profit organizations are expressly declared to be governmental in nature, with no liability for negligence accruing as against the City. The same is not true of §§ 303 et seq., concerning water sales to privately owned water distribution systems such as Hilliary's.

In view of our conclusion herein, a detailed statement of the pleadings is not required. District filed a petition for mandamus against the City and some of its officials. It consisted for the most part of detailed allegations that Hilliary, in the operation of his water distribution system, was violating certain of his contractual commitments to the City, and certain restrictions and conditions allegedly imposed upon him by the City, and that the City should be ordered to "abrogate" its agreement with Hilliary because of his noncompliance, and for the further reason that the contract was "in violation of the laws of the United States of America". There was no allegation that the water being sold to Hilliary was needed for the use of the City and its inhabitants. The District asked that the City be ordered "to immediately terminate" the sale of water to Hilliary or, in the alternative, that the City be ordered to require Hilliary "to fulfill completely" his agreement with the City. There was no direct allegation that the District had an exclusive franchise for the sale and distributions of water within its geographical boundaries.

An alternative writ was issued and a date set for a hearing thereon.

Before the hearing Hilliary was permitted to intervene and plead to the petition of District. In his answer, and in the further proceedings in this case, Hilliary made common cause with the City in opposition to District's petition.

About three weeks before the District filed its petition in the district court, its Board of Directors filed a complaint against Hilliary before the Corporation Commission. The complaint contained many of the allegations of fact later incorporated in the petition in the district court, and alleged that for those reasons, Hilliary was violating the provisions of General Order No. 16631, which contains the Commission's general rules for the regulation of water utility services. Hilliary was cited to appear and a full hearing was had before the Commission en banc while the district court action was still pending. The Commission made findings generally favorable to Hilliary and later ordered the complaint dismissed. No questions were raised in this proceeding as to the Commission's jurisdiction, and no appeal was taken to this Court.

After continuances during which the parties apparently tried and failed to settle their differences, the district court action was tried to the court. Voluminous documentary evidence was introduced and about 28 witnesses testified. The testimony with regard to the allegations that Hilliary was violating the terms of his contractual arrangements with the City was in conflict. After the hearing, the court re-

ceived written briefs of the parties and thereafter entered judgment ordering the City to cease its sale of water to Hilliary for resale within the geographical limits of the District, and ordering Hilliary to cease his distribution and sale of water within such limits.

In the judgment, no findings were made as to whether Hilliary was violating his contract with the City, and there was no finding that the water being sold to Hilliary was needed for use by the City or its inhabitants. The granting of the equitable relief sought was plainly based entirely upon a finding that the District "has an exclusive franchise to operate and maintain a water distribution system" within its geographical limits, and a corollary finding that the City "has no right to interfere directly or indirectly, or to compete with" the District by selling water to Hilliary for resale within such limits.

In their joint briefs in this Court, appellants, City and Hilliary, argue among other things (1) that the trial court erred in holding that the District's rights were exclusive, and (2) that since the Corporation Commission has jurisdiction of water distribution systems such as Hilliary's, the District had an adequate remedy at law which it pursued before the Commission had thereafter abandoned without an appeal to this Court, and that the District was therefore not entitled to equitable relief in the district court action. We consider the first one decisive and deal only with it.

■ After a careful examination of the Oklahoma Rural Water Districts Act, 82 O.S.Supp.1963, §§ 1301 et seq., under which District was formed, we find no language purporting to grant an exclusive franchise. This is undoubtedly due to Article 5, § 51, Oklahoma Constitution, which prohibits the granting of "exclusive rights, privileges or immunities" by the Legislature.

District argues, however, that the agreements for the sale of water between City and Hilliary amount to a violation of 7 U.

S.C.A. § 1926(b), under which District's loan from the Farmers Home Administration was made.

The section of the United States Code is a portion of the Consolidated Farmers Home Administration Act of 1961. This Act, as amended, provides for loans to be made, or insured, by the Farmers Home Administration to provide for various services in rural areas, such as the loan to District in this case. Sec. 1926(b) provides that the services "shall not be curtailed or limited * * * by the granting of any private franchise for similar services within such area during the term of such loan * * *".

District argues that in this case, the City has in effect granted such a "private franchise".

■ We do not agree. We know of no statute authorizing a municipality of this state to grant a "franchise" for any purpose, exclusive or otherwise, outside of its corporate boundaries. In the grant of a franchise inside its corporate boundaries, a municipality in this state clearly acts in a governmental capacity, since the grant may be made only by the people themselves, at an election for that purpose. Art. 18, § 5, Oklahoma Constitution.

■ In this case, in its dealings with Hilliary, the City was clearly acting in a proprietary, and not a governmental, capacity. Its relationship with Hilliary was purely contractual, consisting basically of agreements for the sale of water from the City to Hilliary. Even the restrictions which the City placed upon Hilliary after the water-sale agreements were made with him, and which allegedly were not enforced, depend for their validity upon the contract relationship (they were "accepted" by Hilliary). We hold that the City's act, in its proprietary capacity, of selling water to Hilliary outside its corporate limits, did not amount to the granting of a private franchise to Hilliary for the operation of a water distribution system inside the geographical limits of the District.

The extensive comments of the trial judge at the time of pronouncing judgment in this case indicate that he relied heavily upon Attorney General's Opinion No. 68–211, promulgated on January 16, 1968, in which the Attorney General considered the relative rights of rural water districts and municipalities when a portion of the district has been annexed by the municipality.

The reasoning in the Attorney General's opinion, as applied by analogy by the trial court in this case, may fairly be summarized as follows: (1) under 7 U.S.C.A. § 1926(b), the services provided by a rural water district holding a Farmers Home Administration loan may not be curtailed by the granting of a private franchise for similar services in the area; (2) under 82 O.S.Supp.1963, § 1309(4), our Legislature authorized the District "to enter into such agreements" as the United States or its designated agency may require, in order to obtain the loan; (3) therefore, our Legislature must have intended for the District to have an exclusive franchise for the operation of a water distribution system within its geographical boundaries.

However, we will not ascribe to our Legislature an intention to violate Art. 5, § 51, of the Oklahoma Constitution. As we have seen, under that section our Legislature is without power to grant an exclusive franchise. Such being true, the theory advanced amounts to a suggestion that the Legislature intended to evade that restriction upon its power by authorizing the District to create for itself an exclusive franchise by entering into the loan contract with the Farmers Home Administration. Under this theory, the contracting power of the District, authorized by the Legislature, becomes a sort of "intermediate link" between the power of the Legislature and the creation of an exclusive franchise. This Court has previously rejected a line of reasoning which included a similar "intermediate link" in a case involving other constitutional limitations. See State ex rel. Settles v. Board of Education, Okl., 389 P.2d 356, at page 360.

The judgment of the trial court is reversed.

DAVISON, V. C. J., and JACKSON, IRWIN, HODGES, LAVENDER, and McINERNEY, JJ., concur.