RURAL WATER DISTRICT # 3, Washington County, Oklahoma, Plaintiff,

v.

OWASSO UTILITIES AUTHORITY, Its Board of Trustees, Consisting of Jerrald Holt, Chairman, Bill Williams, Vice-Chairman, Boyd Spencer, Secretary and V. D. Duncan, Treasurer, Defendants,

and

Farmer's Home Administration, United States Department of Agriculture, United States of America, Defendant.

No. 77–C–99–D.

United States District Court,
N. D. Oklahoma.

July 3, 1979.

Lewis C. Johnson, Tulsa, Okl., for plaintiff.

Kenneth P. Snoke, Asst. U. S. Atty., Tulsa, Okl., C. F. DeLaFleur, Harold Charney, Owasso, Okl., Douglas Mann, Tulsa, Okl., for defendants.

## ORDER

DAUGHERTY, Chief Judge.

A non-jury trial was had in the above captioned case on December 19, 1977 and January 4, 1978, before the United States Magistrate, pursuant to the agreement of all parties, Order of the Court No. M–128 and Title 28 U.S.C. § 636.

Thereafter, the Magistrate filed his Findings and Recommendations (including Findings of Fact and Conclusions of Law).

Objections and Exceptions to the Findings and Recommendations of the Magistrate were duly filed by the defendant, Owasso Utilities Authority. The matter has been briefed by the parties and is ready for final disposition by the Court.

The Plaintiff, Rural Water District # 3, Washington County, Oklahoma, was incorporated by the County Commissioners of Washington County, Oklahoma, on the 25th day of January, 1965. The Water District operated under a franchise to serve the public within certain territorial limits. It is noted that the use of the word "franchise" by the parties connotes "the territory which they have authority to operate under, by creation of Rural Water District # 3." (Tr. 6). The territory serviced by Plaintiff encompasses certain areas within Washington, Tulsa and Rogers Counties.

The Defendant, Owasso Utilities Authority, is a public trust with the City of Owasso, Oklahoma, as the beneficiary. The trust was created pursuant to the laws of the State of Oklahoma, Okla.Stat. Tit. 60, §§ 176–180, as amended. The Declaration of Trust is dated July 6, 1966, and was accepted on July 18, 1966.

The purpose of the public trust is to provide utility service, including water and sanitary sewer service, to areas inside and outside the corporate limits of the City of Owasso.

The Defendant, Farmer's Home Administration, holds two real estate mortgages as security for construction money loaned to Rural Water District # 3. The Rural Water system was built with money loaned by the Farmer's Home Administration, and the amount of the mortgages is approximately $1,000,000.00.

The Defendant, Owasso Utilities Authority, is providing services to individuals who reside in the franchised territory (as hereinabove defined) granted to Plaintiff by serving approximately 118 homes (approximately 12 homes are located on a tract of land which has a boundary on State Highway 169 North of 106th Street North to State Highway 20; and, approximately 106 homes located in the Joe Steed Addition, North of 116th Street North, Range 14 East). None of the territory so described has been annexed by the City of Owasso to bring it within the corporate limits of the City of Owasso.

The Farmer's Home Administration in addition to supporting the position of Plaintiff herein, requests that a judgment be entered decreeing the mortgages to be first and prior liens on the real estate.

The Defendant, Owasso Utilities Authority, in the Objections and Exceptions filed, specifically objects to Finding Number 8, Finding Number 9, and the Conclusions of Law submitted by the Magistrate.

The Court will limit its examination of the record and disposition to those objections specifically raised, and will adopt and affirm the Findings of the Magistrate not objected to.

Objection is made to Finding Number 8, which reads as follows:

8. Based on an average water bill of $12.75 per home, Plaintiff has sustained a loss of revenue in the sum of $1,504.50

per month or $18,054.00 per year. Such loss of revenue impairs the ability of the Plaintiff to repay its loan to the Farmers Home Administration.

It was stipulated in the pretrial order that the average water bill was $12.75 per home and the loss per month was $1,504.50 or $18,054.00 per year loss of revenue. (See additionally Tr. 18).

At page 47 of the transcript, Mr. Edwin R. Cape, Chairman of the Board of Directors of Rural Water District # 3, Washington County, testified on direct examination by Mr. Snoke, commencing at line 19:

Q And in that connection let me ask you this; taking into consideration the intrusion of the Owasso Water District into the areas serviced by Rural Water District # 3, does that in any way impede or will it impede the ability of the Rural Water District to pay back the loan now outstanding to the Farm Home Administration?

A Yes, that's where the bulk of our capital investment is, south of Highway 20.

At page 49 of the transcript, commencing at line 23, in response to a question propounded by Mr. Johnson, counsel for Plaintiff, the following testimony was elicited:

MR. JOHNSON: Do you remember, Ed, how much the payments are per year?

THE WITNESS: The payments are approximately $50,000 a year.

The Court notes that there is no testimony in the record as to the total revenue received by Rural Water District # 3 per month, from all subscribers and what ratio the stipulated amount bears to the total revenue. There is no evidence that Rural Water District # 3 is in default on any payment due on said loans.

Attached as Exhibit "C" and Exhibit "D" to the Answer of the Defendant, Farmer's Home Administration, are copies of Financing Statements. One Financing Statement secured the indebtedness due Farmer's Home Administration under date of December 8, 1972, and covers all of "the proceeds, revenue, water charges, assessments, and income of all kinds and nature whatever derived from the operation by debtor of its water works system." The other Financing Statement secured the indebtedness due Farmer's Home Administration under date of August 13, 1976, and covers "all proceeds, revenue, water charges, assessments, and income of all kinds and nature whatever derived from the operation by debtor of its water works system."

[1] The mere fact that a witness makes a statement does not require an acceptance of such statement as creditable evidence. However, there is no controverting testimony or evidence in the record as to the statement made by Mr. Cape. Evidence of an actual default is not required to show that ability to repay is impaired. Based upon the totality of the record, the Court cannot agree that the Conclusion of the Magistrate is not substantiated by the evidence or testimony.

Defendant, Owasso Utilities Authority objects to Finding No. 9 and the Conclusions of Law of the Magistrate. Finding No. 9 reads as follows:

9. The furnishing of water by the Defendant OUA to inhabitants within the territory of RWD # 3 curtails or limits the service provided by RWD # 3 within its franchise territory.

The Owasso Utilities Authority argues that the curtailment found by the Magistrate is not "curtailment" contemplated in Title 7 U.S.C. § 1926(b).

Title 82, § 1301, *et seq.* of the Oklahoma Statutes, covers Rural Water and Sewer Districts. Section 1324.10(A)–4 provides in pertinent part:

A Every district incorporated hereunder ... shall have power:

4. to borrow money and otherwise contract indebtedness for the purposes set forth in this act, and, without limitation of the generality of the foregoing, *to borrow money and accept grants from the United States of America, or from any corporation or agency created or designated by the United States of America, and, in connection with such*

*loan or grant, to enter into such agreement as the United States of America or such corporation or agency may require;* . . . (Emphasis supplied).

Title 7 U.S.C. § 1926(b) provides:

(b) The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body; or by the granting of any private franchise for similar service within such area during the term of such loan; . . .

The Supreme Court of the State of Oklahoma had occasion to deal with these two statutes in *Comanche County Rural Water Dist. No. 1 v. City of Lawton*, 501 P.2d 490 (Okl.1972), which the Defendant here asserts, is dispositive of the issues now before the Court. The case involved an appeal from the judgment of the trial court granting a petition for writ of mandamus sought by the Comanche Rural Water District No. 1 against the City of Lawton, some of its officials, and one Edward A. Hilliary (an intervenor). The district was a non-profit rural water district organized in 1965 pursuant to the provisions of 82 O.S.Supp.1963, §§ 1301 *et seq.* Mr. Hilliary, both before and after the organization of the District, operated a small water distribution system in the same general vicinity as the District. Both the District and Hilliary purchased water for resale from the City, which had water pipelines and facilities nearby. A substantial portion of the District's funding consisted of a loan from, or insured by, the Farmer's Home Administration, pursuant to 7 U.S.C. § 1926. The City's sale to Hilliary was made pursuant to authority found in Okla.Stat. Tit. 11, §§ 303 and 304 (now codified as Okla.Stat. Tit. 11, §§ 37–119, 37–120 and 37–123). Under § 304, the water-sale contract with Hilliary could be abrogated at any time by the governing body of the City, by resolution that the water being sold was required by such City for its own use and the use of its inhabitants. The City's sales to the District were authorized by Okla.Stat. Tit. 11, §§ 330.51 *et seq.* (now § 37–121), concerning sales of water to non-profit organizations. Under § 330.52, the City's activities in selling water to non-profit organizations were expressly declared to be governmental in nature, with no liability for negligence accruing against the City. (In *Parks v. City of Oklahoma City*, 559 P.2d 1266 (Okl.App. 1976), however, the Court of Appeals found that this section did not change the existing Oklahoma law that operation of a water system *by the city* was a proprietary function.) The Supreme Court found that the same was not true of § 303 *et seq.* concerning water sales to privately owned water distribution systems. The Rural Water District commenced the action against the City, detailing allegations that Hilliary in the operation of his water distribution system, was violating certain of his contractual commitments to the City and certain restrictions and conditions allegedly imposed upon him by the City and that the City should be ordered to abrogate its agreement with Hilliary because of his noncompliance, and for the further reason that the contract was in violation of the laws of the United States. There was no allegation that the water sold to Hilliary was needed for the use of the City or its inhabitants. There was no direct allegation that the District had an exclusive franchise for the sale and distribution of water within its geographical boundaries.

The trial court entered judgment in favor of the Water District, making no findings as to whether Hilliary violated his contract, and no finding that the water sold to Hilliary was needed for use by the City or its inhabitants. The trial court granted equitable relief based entirely upon a finding that the District had an exclusive franchise to operate and maintain a water distribution system and a corollary finding that the City had no right to interfere directly or indirectly, or to compete with the District by selling water to Hilliary for resale.

The Supreme Court of the State of Oklahoma stated:

After a careful examination of the Oklahoma Rural Water Districts Act, 82 O.S.

Supp.1963, §§ 1301 et seq., under which District was formed, we find no language purporting to grant an exclusive franchise. This is undoubtedly due to Article 5, § 51, Oklahoma Constitution, which prohibits the granting of "exclusive rights, privileges or immunities" by the Legislature.

District argues, however, that the agreements for the sale of water between City and Hilliary amount to a violation of 7 U.S.C.A. § 1926(b), under which District's loan from the Farmer's Home Administration was made.

The Section of the United States Code is a portion of the Consolidated Farmer's Home Administration Act of 1961. This Act, as amended, provides for loans to be made, or insured, by the Farmer's Home Administration to provide for various services in rural areas, such as the loan to District in this case. Sec. 1926(b) provides that the services "shall not be curtailed or limited ... by the granting of any private franchise for similar services within such area during the term of such loan..."

District argues that in this case, the City has in effect granted such a "private franchise."

We do not agree. We know of no statute authorizing a municipality of this state to grant a "franchise" for any purpose, exclusive or otherwise, outside of its corporate boundaries. In the grant of a franchise inside its corporate boundaries, a municipality in this state clearly acts in a governmental capacity, since the grant may be made only by the people themselves at an election for that purpose. Art. 18, § 5, Oklahoma Constitution.

In this case, in its dealings with Hilliary, the City was clearly acting in a proprietary, and not a governmental, capacity. *Comanche County, supra*, at 492.

The Legislative history of Title 7 U.S.C. § 1926(b) is found in U.S.Code Congressional and Administrative News, 87th Cong. 1961, Vol. 2, pages 2243, 2309, which states:

By interpretation loans to associations cannot now be made unless a major part of the use of the facility is to be by farmers. This section would broaden the utility of this authority somewhat by authorizing loans to associations serving farmers, ranchers, farm tenants, and other rural residents. This provision authorizes the very effective program of financing the installation and development of domestic water supplies and pipelines serving farmers and others in rural communities. By including service to other rural residents, the cost per user is reduced and the loans are more secure in addition to the community benefits of a safe and adequate supply of running household water. *A new provision has been added to assist in protecting the territory served by such an association facility against competitive facilities, which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system.* (Emphasis added.)

And at page 2305, under the "Short Explanation" of Title III of the Agricultural Act of 1961, it is stated that

This title—

9. Prohibits curtailment of a water association borrower's service as a result of inclusion of its service area within the boundaries of any public body or as a result of the granting of any private franchise for similar service in such area.

This Court finds that the *Comanche County* case, *supra*, is distinguishable from the instant litigation. The *Comanche County* case did not involve an "encroachment" by the municipality into areas within the confines of the Water District territory by either annexation or otherwise. It involved the sale of water by the City to a private water supplier located within the confines of the Water District territory. This Court finds no fault with the Oklahoma Supreme Court's interpretation of its own State Constitution as to "exclusive franchises." The question before the Oklahoma Supreme Court was whether the action of the City, in selling water to Hilliary outside of its city limits, amounted to the granting of a private franchise. That question is not before this Court.

It is noted, however, that the Oklahoma Supreme Court did not stop with their decision as to governmental or proprietary functions. The Court went on, by analogy, to strike down an opinion of the Attorney General relating to § 1926(b). The Court did not deal with the constitutionality of § 1926(b), nor did the Court consider the question of the supremacy of the Federal Act.

▮ Federal Courts are not bound by State Court precedents on federal questions. The Federal Courts are not bound by State Court decisions as to the effect of the Federal Constitution or the effect of Federal Statutes. *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed.2d 165 (1942); *Standard Oil Co. v. Johnson*, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942); *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Silas Mason Co. v. Tax Comm'n*, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187 (1937). The State Court decision is persuasive authority only.

In construing agricultural legislation which provides for governmental assistance or aid to agriculture and those involved therein, the real object of the legislation, the method adopted to accomplish the purpose, and relation of the aid prescribed to the general welfare, and the effect of the statute upon constitutional rights of those in other classes of citizenry, are all deserving of close attention when an individual statute comes up for scrutiny. 3 Am. Jur.2d, *Agriculture*, § 19.

In this connection, the Court notes that much time was expended and testimony elicited as to the adequacy of the Water District system for the purposes of fire protection. The Court finds that § 1926(b) of the Agricultural Credit Act, Title 7 U.S.C. § 1921 *et seq.* was not enacted for the purposes of fire protection—it was enacted to provide means of securing a "safe and adequate supply of running household water." There is no evidence in the record that the Water District is not effectuating the purpose of the Statute with the implementation of its water system.

The Court finds that the purpose of § 1926(b), as reflected by the legislative history, is clear, *i.e.,* "protecting the territory served by such an association facility against competitive facilities which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system." There is nothing in the Act itself to preclude the Owasso Utilities Authority from maintaining a water line for the purposes of fire protection *only.* Section 1926(b) does not encompass such a purpose.

▮ It is well settled that Courts will not pass on the constitutionality of an act of the legislature if the merits of the case at hand may be fairly determined otherwise without so doing.

It is apparent in this case that the United States, in the passage of the Agricultural Credit Act, has a paramount interest, not only in the supply of running household water in rural areas, but also for the repayment of funds advanced for the implementation of such systems. Section 1926(b) serves the purpose for which it was enacted.

Defendant OUA argues in its Objections to the Magistrate's Findings as follows: [7 U.S.C. § 1926(b)] merely prevents a city or anyother [sic] public body from granting a franchise which would exclude an association such as the Rural Water District from selling water ... the statute never intended to give Rural Water Districts an exclusive monopoly over vast territories such as is the case here.

\*    \*    \*    \*    \*    \*

It is submitted that Section 1926(b) does not state that there shall be no open competition for the sale of water within the district. It does not say that a municipal corporation or public body may not impede the repayment of the loan by reason of competition. Section 1926(b) merely states that a corporation or public body may not legislate away the right of the district to operate within its district.

While it is true that 7 U.S.C. § 1926(b) does not *explicitly state* that "there shall be

no open competition," it is clear from the legislative history quoted *supra* that the intent of Congress was to protect rural water districts from "competitive facilities," especially those which would be developed as a result of the expansion of neighboring municipalities.

■ Although Plaintiff has strenuously urged that this Court consider the application of the Supremacy Clause of the United States Constitution, *U.S.Const.* Art. VI, cl. 2, the Court is mindful of the established principle that constitutional questions will be avoided if possible, in the absence of compelling necessity. *See, e.g., Bowen v. United States,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975); *Spector Motor Co. v. McLaughlin,* 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944); *Life Ins. Co. of North America v. Reichardt,* 591 F.2d 499 (Ninth Cir. 1979); *Uhl v. Ness City, Kansas,* 590 F.2d 839 (Tenth Cir. 1979).

■ There is no conflict between the Oklahoma Statutes empowering municipalities to furnish water outside of their city limits and the Federal Act. Title 11 Okla. Stat. §§ 37–119 to 37–123 (formerly §§ 303–307 and 330.51–330.52) expressly authorize cities to do so, and specify how such contracts may be made. *See Comanche County, supra; Town of Skiatook v. Brummett,* 387 P.2d 115 (Okl.1963); *State ex rel. City of Tulsa v. Mayes,* 174 Okl. 286, 51 P.2d 266 (1935); *Hodges v. Town of Forgan,* 581 P.2d 931 (Okl.App.1978).

■ Title 7 U.S.C. § 1926(b) does not negate the power of municipalities to sell water as provided for in the Oklahoma Statutes, nor does it affect the authorization thereof. It does, however, place federally-imposed limitations upon that power, limitations designed to effectuate the legislative scheme of Congress embodied in the Agricultural Act of 1961 (7 U.S.C. § 1921 *et seq.*). Section 1926(b) prohibits the municipalities' exercise of these powers when their exercise would result in competition with a Rural Water District. In any case, it is established that the prohibition of a federal statute may not be set at naught by state statutes or common law rules. *Sola Elec-*

*tric Co. v. Jefferson Electric Co., supra; Laverne v. Corning,* 316 F.Supp. 629 (S.D.N.Y.1970); *United States v. Board of Harbor Commissioners,* 73 F.R.D. 460 (D.Del.1977). *See also* 81A C.J.S. *States* § 24 (1977).

Neither is there a conflict between the federal statute and the provisions of the Oklahoma Constitution. Article 5, § 51 of the Oklahoma Constitution is an express limitation upon the power of the State Legislature, and reads as follows:

The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State.

In *Comanche County, supra,* the Oklahoma Supreme Court discussed this provision in the context of a rural water district's franchise, saying:

The reasoning in the Attorney General's opinion, as applied by analogy by trial court in this case, may fairly be summarized as follows: (1) under 7 U.S.C.A. § 1926(b), the services provided by a rural water district holding a Farmers Home Administration loan may not be curtailed by the granting of a private franchise for similar services in the area; (2) under 82 O.S.Supp.1963, § 1309(4), our Legislature authorized the District "to enter into such agreements" as the United States or its designated agency may require, in order to obtain the loan; (3) therefore, our Legislature must have intended for the District to have an exclusive franchise for the operation of a water distribution system within its geographical boundaries.

However, we will not ascribe to our Legislature an intention to violate Art. 5, § 51, of the Oklahoma Constitution. As we have seen, under that section our Legislature is without power to grant an exclusive franchise. Such being true, the theory advanced amounts to a suggestion that the Legislature intended to evade that restriction upon its power by authorizing the District to create for itself an exclusive franchise by entering into the loan contract with the Farmers Home Administration. Under this theory, the contracting power of the District, authorized by the Legislature, becomes a sort

of "intermediate link" between the power of the Legislature and the creation of an exclusive franchise. This Court has previously rejected a line of reasoning which included a similar "intermediate link" in a case involving other constitutional limitations. See *State ex rel. Settles v. Board of Education*, Okl., 389 P.2d 356, at page 360.

*Comanche County, supra* at 493. See also Opinion No. 71–115 of the Attorney General of the State of Oklahoma. As previously mentioned, this Court finds no fault with the Oklahoma Supreme Court's interpretation of the State Constitution. The instant question, however, does not for its resolution depend upon the power of the Oklahoma Legislature to grant exclusive franchises, whether directly or through an "intermediate link." Title 7 U.S.C. § 1926(b) is an Act of Congress prohibiting certain activities during the life of loans made pursuant to the Agricultural Act of 1961 (7 U.S.C. § 1921 *et seq.*).

The power of the Oklahoma Legislature to grant franchises has nothing whatsoever to do with the power of Congress to prohibit those things which it views as detrimental to the accomplishment of its lawful objectives.

The Court, therefore, finds that the Objections and Exceptions to Findings and Recommendations of Magistrate filed by the Defendant, Owasso Utilities Authority, be and the same should be overruled and the Findings and Recommendations of the Magistrate should be affirmed and adopted by this Court, insofar as the same are in conformity with this Order of the Court, and that Judgment should be entered in favor of the Plaintiff, Rural Water District # 3, and the Defendant, Farmer's Home Administration, and against Defendant, Owasso Utilities Authority, and Defendants, Jerrald Holt, Chairman; Bill Williams, Vice-Chairman; Boyd Spencer, Secretary, and V. D. Duncan, Treasurer, enjoining said Defendants, their agents, servants and employees, or anyone acting under their direction, from any additional or further expansion of its services within the geographical confines of the territory of Plaintiff, but permitting the Owasso Utilities Authority to continue to serve the 223 homes which it is presently serving within the territory of the Plaintiff.

The Court further finds that since this is an action for declaratory judgment and injunction and no monetary damages are sought, no monetary damages have been considered or awarded, except in respect to the issuance of an injunction.

The Court further finds that it need not reach the issue as to the validity of the notes and mortgages of the Defendant, Farmer's Home Administration, for the reason that there is no dispute between the parties as to the validity of such notes and mortgages, and neither the Plaintiff nor the Defendant seek any affirmative relief against the Defendant, Farmer's Home Administration, on that issue. In this connection, the Court finds that the cause of action and complaint as against Farmer's Home Administration should be dismissed without prejudice on the issue as to the validity of the notes and mortgages.